**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BLUJAY STUDIOS, INC.<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO,<br><br>Defendants. | Case No. 26-cv-12512<br><br>Judge |

**COMPLAINT**

Plaintiff, BLUJAY STUDIOS, INC. ("BLUJAY") ("Plaintiff"), by undersigned counsel, hereby complains of the Individuals, Corporations, Limited Liability Companies, Partnerships and Unincorporated Associations identified in Schedule A attached hereto (collectively, "Defendants"), and hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq.; 28 U.S.C. § 1338(a) - (b) and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant Online Marketplace Accounts identified in Schedule A attached hereto (collectively, the "Defendant Internet Stores"). Specifically, the Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products bearing infringing versions of Plaintiff's trademark. The Defendants have established online stores using the third-party retailers Avalahcase.com, Amazon, Payoneer and PayPal, secured inventories of infringing products to sell through these online stores, unequivocally asserted a willingness to ship infringing goods to Illinois through those stores, targeted sales from Illinois residents through those stores and accepted payment in U.S. dollars for the sale of infringing products bearing infringing versions of Plaintiff's common law trademark. Each Defendant sold an infringing product to a customer with an address located in the Northern District of Illinois on either March 11, 2025, August 1, 2025, or August 6, 2025, and agreed to ship the product to the same address. Each of the Defendants is committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

## INTRODUCTION

3. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing versions of Plaintiff's common law trademark (the "Infringing Products").

4. Defendants have created numerous Internet Stores and designed them to appear to be selling genuine Plaintiff's products, while selling inferior imitations of Plaintiff's products. The Defendant Internet Stores each sell products that share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence or series of transactions or occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal operation. Plaintiff is forced to file this action to combat Defendants' infringing of Plaintiff's trademark as well as to protect unknowing consumers from purchasing unauthorized products over the Internet. Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademark as a result of Defendants' actions and seeks injunctive and monetary relief.

5. This Court has personal jurisdiction over each Defendant, in that each Defendant conducts business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District. In addition, each Defendant sold an infringing product to a customer with an address located in the Northern District of Illinois on either March 11, 2025, August 1, 2025, or August 6, 2025, and agreed to ship the product to the same address.

**THE PLAINTIFF**

6. Plaintiff BLUJAY is headquartered at 655 156TH Ave SE Ste 300 Bellevue, WA, 98007-5014.

7. Plaintiff manages the licensing, sale and marketing of APHMAU products and is in the business of developing, marketing, selling, and distributing APHMAU products. Jessica

Bravura and her husband, Jason, created the YouTube Channel, Aphmau Gaming in August 2012. The Aphmau Gaming Channel posts a variety of gaming roleplay content and story-telling content, primarily focused on the Minecraft and Roblox video games. As of 2025, the YouTube channel has 24.3 million subscribers and over 27 billion views. APHMAU is a popular gaming and entertainment YouTube channel, and the MeeMeows collectible plush toys are the official pets of the APHMAU brand. MeeMeows products are plush kittens that come in a variety of sizes and styles which are sold online at aphmeow.com and are distributed through major retailers including Walmart, Target, Meijer, Amazon, Claire's and Smyth's Toys Superstores. BLUJAY is the official source of APHMAU products.

https://www.aphmeow.com/




8. Plaintiff has common law rights to the "APHMAU" name and mark (the "APHMAU Trademark").

9. The APHMAU Trademark is distinctive and identifies merchandise as goods from Plaintiff or its duly authorized licensees.

10. The APHMAU Trademark has been continuously used and never abandoned.

11. Plaintiff's APHMAU Trademark is exclusive to Plaintiff and is displayed extensively on Plaintiff's Products and in Plaintiff's marketing and promotional materials. Plaintiff's APHMAU Trademark has been the subject of substantial and continuous marketing and promotion by Plaintiff at great expense. In fact, Plaintiff expends significant resources annually in developing, advertising, promoting and marketing products featuring Plaintiff's APHMAU Trademark. Plaintiff's promotional efforts include — by way of example, but not limitation — substantial print media, a website, social media sites and point of sale materials. Because of these and other factors, Plaintiff's APHMAU Trademark has become famous worldwide. As a result, products bearing the APHMAU Trademark are widely recognized and exclusively associated by consumers, the public and the trade as being products sourced from Plaintiff.

12. Plaintiff's APHMAU Trademark is distinctive when applied to Plaintiff's products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or licenses others to do so, Plaintiff has ensured that products bearing its Trademark are manufactured to the highest quality standards. Plaintiff's APHMAU Trademark has achieved fame and recognition, which has only added to the inherent distinctiveness of the mark. As such, the goodwill associated with Plaintiff's APHMAU Trademark is incalculable and of inestimable value to Plaintiff.

## THE DEFENDANTS

13. Defendants are individuals and business entities who, upon information and belief, primarily reside in unknown locations in the People's Republic of China or another foreign jurisdiction. Defendants conduct business throughout the United States, including Illinois and within this Judicial District, through the operation of the fully interactive commercial websites and online marketplaces operating under the Defendants' Internet Stores. Each Defendant targets the

United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and this Judicial District. Each Defendant sold an infringing product to a customer with an address located in the Northern District of Illinois on either March 11, 2025, August 1, 2025, or August 6, 2025, and agreed to ship that product to the same address.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

14. The success of Plaintiff's brand has resulted in its infringement. Plaintiff has identified numerous online marketplace accounts linked to fully interactive websites and marketplace listings on platforms such as Avalahcase.com, Amazon, Payoneer and PayPal, including the Defendants' Internet Stores, which were offering for sale, selling, and importing infringing products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating the Defendants' Internet Stores. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in 2025 was over $7.4 billion, up from $5.4 billion in 2024. According to a 2021 study on the impact of the sale of fraudulent goods entitled "The Counterfeit Silk Road - Impact of Counterfeit Consumer Products Smuggled into the United States" (the 2021 study), Internet websites like the Defendant Internet Stores are also estimated to contribute to over 653,000 lost jobs for legitimate businesses and broader economic damages such as lost wages in an amount over $36 billion and a loss of federal and state tax revenue of over $13.5 billion every year.

15. Upon information and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online

retailers, outlet stores, or wholesalers selling genuine products. Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and Avalahcase.com, Amazon, Payoneer and PayPal. Defendants' Internet Stores include images and design elements that make it very difficult for consumers to distinguish such infringing sites from an authorized website. Defendants use high-quality images in conjunction with the APHMAU Trademark to exploit Plaintiff's credibility and goodwill and lend legitimacy to their illicit storefronts. Defendants further perpetuate the illusion of legitimacy by offering customer service and using indicia of authenticity and security at checkout that consumers have come to associate with authorized retailers, including major credit card companies as well as the Payoneer® and PayPal® logos.

16. Plaintiff has not licensed nor authorized Defendants to use its Trademark and none of the Defendants are authorized retailers of its genuine products.

17. Upon information and belief, Defendants deceive unknowing consumers by using the Plaintiff's APHMAU Trademark without authorization within the content, text, and/or meta tags of its websites to attract various search engines looking for websites relevant to consumer searches for Plaintiff's products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants' Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for Plaintiff's genuine products. Further, Defendants utilize similar illegitimate SEO tactics to propel new online marketplace account listings to the top of search results after others are shut down.

18. Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Internet Stores. For example,

many of Defendants' names and physical addresses used to register their Online Marketplace Accounts are incomplete, contain randomly typed letters or fail to include cities or states. On information and belief, other of Defendants' Online Marketplace Accounts use privacy services that conceal the owners' identity and contact information. Upon information and belief, some of the tactics used by the Defendants to conceal their identities and the scope and interworking of their operations to avoid being shut down include regularly creating new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other fictitious names and addresses.

19. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores. For example, some of the Defendants' websites have identical layouts, even though different aliases were used to register their respective online marketplace accounts. In addition, the infringing products for sale in the Defendants' Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by a common source and that Defendants are interrelated. The Defendants' Internet Stores also include other notable common features, including use of the same online marketplace account registration patterns, unique shopping cart platforms, similar payment and check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers and the use of the same text and images.

20. In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. For example, when infringers like Defendants receive notice of a lawsuit they will often register new online marketplace accounts under new aliases and move website

hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. Infringers will also ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. The 2021 study indicated that the Internet has fueled explosive growth in the number of small packages of infringing goods shipped through the mail and express carriers. This growth closely correlates to the growth of the ecommerce industry which now make up 16.8% of all retail transactions as reported by the Census Bureau of the U.S. Department of Commerce. According to the Department of Homeland Security's 2024 Intellectual Property Rights Seizures Report, the vast majority of Intellectual Property Rights seizures continue to take place within the express consignment and mail shipping methods. 97% of all cargo seizures were made in de minimis shipments. According to the U.S. Border Control, 1.36 billion de minimis shipments were made into the United States in 2024 and "Criminal groups are exploiting the explosive growth of e-commerce to sell infringing goods and other illicit products through online platforms and are using the unprecedented growth in the number of low value shipments entering the United States to smuggle dangerous, illicit goods."

21. Further, infringers such as Defendants typically operate multiple credit card merchant and Avalahcase.com, Amazon, Payoneer and PayPal accounts behind layers of payment gateways so that they can continue to operate in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their Avalahcase.com, Amazon, Payoneer and PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of Avalahcase.com, Amazon, Payoneer and PayPal transaction logs from prior similar cases indicate that offshore infringers regularly move funds from

U.S.-based Avalahcase.com, Amazon, Payoneer and PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

22. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation and potential new lawsuits.

23. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's APHMAU Trademark in connection with the advertisement, distribution, offering for sale and sale of infringing products into the United States and Illinois over the Internet. Each Defendants' Internet Stores offer shipping to the United States, including Illinois and, on information and belief, each Defendant has offered to sell infringing products into the United States, including Illinois.

24. Defendants' use of Plaintiff's APHMAU Trademark in connection with the advertising, distribution, offering for sale and sale of infringing products, including the sale of infringing products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**COMMON LAW TRADEMARK INFRINGEMENT**

25. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-24 of this Complaint.

26. Defendants' actions described above constitute willful, intentional and unauthorized use of the Plaintiff's APHMAU trademark as protected by common law.

27. Defendants' search result pages on Walmart infringe Plaintiff's Trademark because the algorithm used suggests and then recognizes the "APHMAU" mark as a keyword which is used to display infringing "APHMAU" products and other competing products for sale.

28. Defendants' sponsored link advertisements on third-party search engines, such as Google and Bing, infringe the Plaintiff's Trademark because Defendants pay search engines for the right to use "APHMAU" as a keyword which causes Defendants' advertisements for APHMAU to appear in search results on third-party search engines.

29. Defendants' actions generate initial interest confusion by attracting customers browsing the Internet using Plaintiff's Trademark, thereby acquiring goodwill that belongs to Plaintiff. See, *Promatek Industries v. Equitrac Corp*, 300 F.3d 808 (7th Cir. 2002).

30. Defendants' offerings of APHMAU Products for sale on their Online Marketplace listings infringe Plaintiff's APHMAU Trademark.

31. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful use of Plaintiff's APHMAU Trademark in the advertisement, promotion, offer to sell, and sale of third-party products.

32. Defendants' activities constitute trademark infringement of Plaintiff's common law trademark rights. Such infringement has been willful.

33. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill and acquired secondary meaning of its well-known Trademark.

34. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful actions. Plaintiff has no adequate remedy at law, and, if

Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known APHMAU Trademark.

**COUNT II**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**

35. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-34 of this Complaint.

36. Defendants' promotion, marketing, offering for sale and sale of infringing products have created and are creating a likelihood of confusion, mistake and deception among the general public as to the affiliation, connection or association with Plaintiff or the origin, sponsorship or approval of Defendants' infringing products by Plaintiff.

37. By using Plaintiff's APHMAU Trademark in connection with the sale of infringing products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the infringing products.

38. Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the infringing products to the general public under 15 U.S.C. §§ 1114, 1125.

39. Plaintiff has no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510/1, et seq.)**

40. Plaintiff repeats and incorporates by reference herein the allegations contained in paragraphs 1-39 of this Complaint.

41. Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their infringing products as those of Plaintiff, causing likelihood of confusion and/or misunderstanding as to the source of its goods, causing likelihood of confusion and/or misunderstanding as to an affiliation, connection or association with genuine products, representing that their products have Plaintiff's approval when they do not and engaging in other conduct which creates likelihood of confusion or misunderstanding among the public.

42. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510/1 et seq.

43. Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants and each of them as follows:

1) That, pursuant to 15 U.S.C. § 1116(a), Defendants, their affiliates, officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

a. using Plaintiff's APHMAU Trademark or any confusingly similar trademark or name in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's APHMAU Trademark;

b. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff that is not Plaintiff's or is not

produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under their Trademark;

c. committing any acts calculated to cause consumers to believe that Defendants' infringing products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing Plaintiff's APHMAU Trademark and damaging Plaintiff's reputation and goodwill;

e. shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered including Plaintiff's APHMAU Trademark, or any reproductions, infringing copies, or colorable imitations thereof; and

f. using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts or any online marketplace account that is being used to sell or is the means by which Defendants could continue to sell infringing products;

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through f, above;

3) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as Avalahcase.com, Amazon, Payoneer and PayPal, social media platforms, Facebook, YouTube, LinkedIn, Twitter,

Internet search engines such as Google, Bing and Yahoo, and web hosts for the Defendants' Online Marketplace Accounts, shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of infringing products using Plaintiff's APHMAU Trademark including any accounts associated with the Defendants listed in Schedule A; and

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of infringing products using Plaintiff's APHMAU Trademark;

4) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's APHMAU Trademark are increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117(a)-(b);

5) That Plaintiff is awarded its reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated: October 13, 2026 Respectfully submitted,

By: */s/ Michael A. Hierl*
Michael A. Hierl
William B. Kalbac
Robert P. McMurray
Elizabeth A. Miller
Hughes Socol Piers Resnick & Dym, Ltd.
Three First National Plaza
70 W. Madison Street, Suite 4000
Chicago, Illinois 60602
(312) 580-0100 Telephone
mhierl@hsplegal.com

Attorneys for Plaintiff
BLUJAY STUDIOS, INC.

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Complaint was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on October 13, 2026.

s/Michael A. Hierl
Michael A. Hierl